# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**DONALD J. LAUGHLIN AND MATTHEW C. LAUGHLIN AS CO-TRUSTEES OF THE DONALD J. LAUGHLIN GAMING TRUST D/B/A RIVERSIDE RESORT & CASINO,**

    **Plaintiffs,**

 v.

**NATIONWIDE LIFE INSURANCE COMPANY,** *et al.***,**

    **Defendants.**

Case No. 2:19-cv-5549
**CHIEF JUDGE ALGENON L. MARBLEY**
Magistrate Judge Deavers

## OPINION AND ORDER

This matter is before the Court upon the Plaintiffs' Motion for Partial Summary Judgment on Count I—Plaintiffs' breach of contract claim. (ECF No. 13). Defendants have responded in opposition (ECF No. 15) and Plaintiffs have replied (ECF No. 16). This matter is ripe for review. For the following reasons, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED**.

### I. BACKGROUND

This case arises from a Stop Loss Insurance Contract (the "Stop Loss Contract") entered into between Plaintiffs Donald J. Laughlin and Matthew C. Laughlin as Co-Trustees of the Donald J. Laughlin Gaming Trust d/b/a/ Riverside Resort & Casino ("Riverside") and Defendant Nationwide Life Insurance Company ("Nationwide").[1] Riverside created an employee welfare

---

[1] Nationwide is an Ohio corporation engaged in the business of providing health insurance.

benefit plan[2] titled the Riverside Resort & Casino Employee Benefit Plan – Option 1 (the "Plan") for its employees and eligible dependents. (ECF No. 13-1, Laughlin Decl. at ¶ 6; ECF No. 13-3, Plan Document). The Plan is self-funded, meaning that benefits are payable from Riverside's assets and/or contributions from covered employees. (ECF No. 13-1, Laughlin Decl. at ¶¶ 8–9). In January 2018, Riverside purchased an excess insurance policy from Nationwide to cover losses incurred in connection with large, unmanageable, or catastrophic employee health care claims under its self-funded plan. (*Id*. at ¶ 10; ECF No. 13-2). The parties entered into a contract that defined the terms of the Stop Loss Insurance Contract (the "Contract" or "Stop Loss Contract"). The deductible for any one person under the Stop Loss Contract is $200,000. (*Id*).

Riverside appointed a third-party administrator, HPHG, LLC d/b/a Caprock HealthPlans ("Caprock"), to administer the Plan. (ECF No. 13-3). Nationwide appointed RMTS, LLC ("RMTS") as its managing general underwriting agent. (ECF No. 15-1, Hylton Decl. ¶ 5).

The Stop Loss Contract reads as follows:

> Nationwide Life Insurance Company ("Company") agrees to reimburse the Policyholder as outlined under the provisions of this Stop Loss Insurance Contract ("Contract" or "Stop Loss Contract").
>
> \*   \*   \*
>
> The Policyholder is entitled to the reimbursement determined in the Contract and the Schedule of Stop Loss if the Policyholder is eligible for insurance under the provisions of this Contract. Reimbursement is subject to the terms and conditions of this Contract.

(ECF No. 13-2). The Stop Loss Contract includes the following:

> ENTIRE CONTRACT: The entire Contract between the Company and the Policyholder will consist of this Contract, the Application (including the disclosure statement), Stop Loss Proposal, approved amendments and riders, and the Plan which is on file with the Company on the Contract Effective Date.

---

[2] "Employee welfare benefit plan" is defined under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.

(*Id*. at p. 7) (emphasis added). Therefore, the entirety of the Plan forms a part of the Stop Loss Contract, as if fully rewritten therein. (*Id*.).

The terms of the Plan expressly grant discretionary authority to Plan Fiduciaries (i.e. Riverside) to interpret the terms therein, with the express purpose of providing benefits to employees and their beneficiaries:

> **Fiduciary Responsibility, Authority and Discretion**
> Fiduciaries will discharge their duties under the Plan solely in the interest of the Employees and their beneficiaries and for the exclusive purpose of providing benefits to Employees and their beneficiaries and defraying the reasonable expenses of administering the Plan.
>
> **The Fiduciaries will administer the Plan and have the authority to exercise the powers and discretion conferred on them by the Plan and will have such other powers and authorities necessary of proper for the administration of the Plan as may be determined from time to time by the Plan Sponsor.**
>
> In carrying out their responsibilities under the Plan, Fiduciaries will have discretionary authority to interpret the terms of the Plan and Plan Document, even if the terms are found to be ambiguous, and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. **Any interpretation or determination made pursuant to such discretionary authority will be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.**

(*Id*. at p. 71) (emphasis added).

Michael Leffler, an employee at Riverside, was a covered Employee under the terms and conditions of the Plan. (ECF No. 13-1, Laughlin Decl. at ¶ 12). Michael Leffler's spouse, Ruth Ann Gefre, was a covered Dependent under the Plan. (*Id*. at ¶ 13). Ms. Gefre suffered a Berry aneurysm, thereby requiring approximately ten months of medical treatment. From December 10, 2017 until Ms. Gefre's death in July 2018, the Plan paid total medical expenses for Ms. Gefre in excess of $1,476,012.32.[3] (*Id*. at ¶ 14). The determination to pay Ms. Gefre's medical expenses

---

[3] Riverside has obtained a signed HIPAA Authorization to Disclose Health Information, thereby permitting the use and disclosure of medical information in the public domain for purposes of this litigation.

pursuant to the terms of the Plan was made by the Plan's third-party administrator, HPHG, LLC d/b/a Caprock HealthPlans ("Caprock").  (*Id*. at ¶ 15).

Riverside filed several claims for reimbursement with Nationwide under the Stop Loss Contract totaling $1,476,012.32 (the "Gefre Claim").  (*Id*. at ¶ 16).  After subtracting the $200,000 specific deductible, Riverside is seeking $1,276,012.32 under the Stop Loss Contract.  (*Id*. at ¶ 17).

In a letter dated April 24, 2019, Defendant RMTS, LLC, on behalf of Nationwide, denied Plaintiff's claims for reimbursement, excepting only $125,451.32 from its denial.  (*Id*. at ¶ 18; Letter from RMTS, attached as Exhibit D).  However, that amount did not exceed the deductible, therefore, no amount was paid to Riverside.  (*Id*. at ¶ 20).  In the claim denial, Defendants reviewed and reversed the benefits determination, alleging "a significant deviation from the standard of care." (ECF No 13-4, Ex. D).  Riverside appealed Defendants' refusal to honor the stop loss claim; however, Defendants upheld their adverse determination on the same grounds. (ECF No. 13-1, Laughlin Decl. at ¶ 19).

On December 20, 2019, Plaintiffs initiated this case against Defendants alleging four claims arising from the denial of Riverside's claims for reimbursement:  1) Breach of the Stop Loss Contract; 2) Bad Faith; 3) Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing; 4) Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing; 5) Violation of NRS 686A.020 and 686A.310. (ECF No. 1, Compl.).  Plaintiffs have filed a Motion for Partial Summary Judgment as to Count I of the Complaint—breach of the Stop Loss Contract.

## II.     SUMMARY JUDGMENT STANDARD

Plaintiffs move for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012).  The Court's purpose

in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). But self-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, J.). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which

the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson,* 477 U.S. at 251.

### III. LAW AND ANALYSIS

Plaintiffs Donald J. Laughlin and Matthew C. Laughlin, as Co-Trustees of the Donald J. Laughlin Gaming Trust d/b/a Riverside Resort & Casino (hereinafter "Plaintiffs" or "Riverside") move for partial summary judgment on their claim for breach of contract. Riverside asserts that it has complete discretion to approve benefits under the Plan and Nationwide has failed to pay the claims under the Stop Loss Contract. Nationwide counters that it has the contractual right to review Riverside's determinations and deny reimbursement if Nationwide determines the payments do not comply with the terms of the Plan.

#### A. Breach of contract

Plaintiffs allege that Defendants have breached the Stop Loss Contract by failing to pay their claims and therefore seek partial summary judgment on this claim. Defendants assert that the claims were properly denied based on their interpretation of the benefits under the Plan. The disposition of Count I is based on the construction of the terms of an insurance contract, and a determination of the rights and obligations thereunder.[4]

The parties' agreement is defined by the terms of the Stop Loss Contract, which is governed by Nevada law.[5] Under Nevada law, "the construction of an insurance policy raises solely a question of law." *Nationwide Mut. Ins. Co. v. Moya*, 108 Nev. 578, 582, 837 P.2d 426, 428 (Nev.

---

[4] Nationwide appears to agree that there is no question of material fact as long as the Court agrees with their position, as an alternative, however, Nationwide argues there are genuine issues of material fact as to whether the charges at issue were reasonable and whether Caprock abused its discretion in determining the charges were eligible for payment.

[5] The parties do not dispute that, under the plain language of the contract, Nevada law governs this dispute. (ECF No. 13-2, Stop Loss Contract (stating "[t]his Contract is governed by the laws of the state of Nevada.")).

1992). An insurance policy is "a contract that must be enforced according to its terms to accomplish the intent of the parties." *Farmers Ins. Exch. v. Neal*, 64 P.3d 472, 473 (Nev. 2003).

The starting point for interpreting the insurance contract is the plain language of the contract. *McDaniel v. Sierra Health and Life Ins. Co.*, 53 P.3d 904, 906 (Nev. 2002). When construing insurance policies, the Nevada Supreme Court holds, "we broadly interpret clauses providing coverage, to afford the insured the greatest possible coverage. . . ." *Fed. Ins. Co. v. Am. Hardware Mut. Ins. Co.*, 124 Nev. 319, 322, 184 P.3d 390 (Nev. 2008) (citing *Nat'l. Union Fire Ins. Co. of State of Pa. v. Reno's Executive Air, Inc.*, 100 Nev. 360, 365, 682 P.2d 1380 (Nev. 1984). Further, "clauses excluding coverage are interpreted narrowly against the insurer." *Id*. (quoting *Nat'l. Union Fire Ins. Co. of State of Pa.*, 100 Nev. at 365. "When an insurance policy clause is ambiguous, the ambiguity must be resolved against the insurer and in favor of the insured." *Id*.

Nationwide's agreement to reimburse Plaintiffs for eligible losses is defined by the terms of the Stop Loss Contract. The Stop Loss Contract is comprised of "[the] Contract, the Application (including the Disclosure Statement), approved amendments and riders, and the Policyholder's Plan Document." (ECF No. 13-2, Stop Loss Contract at 9). The Stop Loss Contract incorporates the Plan which sets forth the terms and conditions of medical coverage for the claims at issue in this case.

Pursuant to the Plan, fiduciaries are required to discharge their duties "for the exclusive purpose of providing benefits to Employees and their beneficiaries." (ECF No. 13-3, Plan at 71). The Plan provides:

> In carrying out their responsibilities under the Plan, Fiduciaries will have discretionary authority to interpret the terms of the Plan and Plan Document, even if the terms are found to be ambiguous, and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan.

7

(*Id.*).

During the end of 2018 through January 2019, Riverside paid a plan participant's medical expenses and then submitted reimbursement claims to Nationwide pursuant to the Stop Loss Contract. RMTS, on behalf of Nationwide, reviewed the claims and determined that "a significant deviation from the standard of care occurred on December 11, 2017, and treatment provided after that date was the result of the errors in medical care." (ECF No. 15-1, Hylton Decl. ¶ 8). Defendants concluded that no reimbursement was due "because the charges incurred after December 11, 2017 were not covered under the terms of Riverside's health insurance plan and therefore were excluded from coverage under the Stop Loss Contract." (*Id.* at ¶ 9).

Riverside asserts that Defendants own interpretation of what is covered under the Plan or what is reasonable is not permitted under the Stop Loss Contract, but rather Riverside has full discretion to interpret the terms of the Plan and what is reasonable. The Plan's reasonableness provision provides:

> **Reasonable and/or Reasonableness** - shall mean in the administrator's discretion, services or supplies, or fees for services or supplies which are necessary for the care and treatment of Illness or Injury not caused by the treating Provider. Determination that fee(s) or services are Reasonable will be made by the Plan Administrator, taking into consideration unusual circumstances or complications requiring additional time, skill and experience in connection with a particular service or supply; industry standards and practices as they relate to similar scenarios; and the cause of Injury or Illness necessitating the service(s) and/or charge(s).
>
> This determination will consider, but will not be limited to, the findings and assessments of the following entities: (a) The National Medical Associations, Societies, and organizations; and (b) The Food and Drug Administration. To be Reasonable, service(s) and/or fee(s) must be in compliance with generally accepted billing practices for unbundling or multiple procedures. Services, supplies, care and/or treatment that results from errors in medical care that are clearly identifiable, preventable, and serious in their consequence for patients, are not Reasonable. The Plan Administrator retains discretionary authority to determine whether service(s) and/or fee(s) are Reasonable based upon information presented to the Plan

8

> Administrator. A finding of Provider negligence and/or malpractice is not required for service(s) and/or fee(s) to be considered not Reasonable.
>
> Charge(s) and/or services are not considered to be Reasonable, and as such are not eligible for payment (exceed the Maximum Allowable Charge), when they result from Provider error(s) and/or facility-acquired conditions deemed "reasonably preventable" through the use of evidence-based guidelines, taking into consideration but not limited to CMS guidelines.
>
> The Plan reserves for itself and parties acting on its behalf the right to review charges processed and/or paid by the Plan, to identify charge(s) and/or service(s) that are not Reasonable and therefore not eligible for payment by the Plan.

(ECF No. 13-3, Plan at 65).

Plaintiffs assert that the Plan terms are consistent with ERISA which states: "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and – for the exclusive purpose of: providing benefits to participants and their beneficiaries. . ." 29 U.S.C. § 1104(a)(1)(A)(i). Plaintiffs further rely on the language of the Stop Loss Contract that states that "the determination of benefits under the Plan is the sole responsibility of the Policyholder." (ECF No. 13-2, Stop Loss Contract at 14). It is the second part of this provision, however, that Nationwide relies on:

> [Nationwide] reserves the right to interpret the terms and conditions of the Plan as they apply to the Stop Loss Insurance Contract. If [Nationwide] finds that any Payment was not made in accordance with the terms of the Plan, or is not an eligible benefit under the Plan, [Nationwide] may exclude such Payment from Losses. [Nationwide] will have the sole authority to reimburse or deny Losses under this Contract.

(*Id.*).

Nationwide made the same argument presented here in a prior case before this Court. *See Rosecrance Health Network v. Nationwide Life Ins. Co.*, No. 2:07-cv-1140, 2009 U.S. Dist. LEXIS 30188 (S.D. Ohio Mar. 23, 2009) (Marbley, J.) ("*Rosecrance I*"), *modified on reconsideration in part*, No. 2:07-cv-1140, 2009 U.S. Dist. LEXIS 85680 ("*Rosecrance II*"). In

9

*Rosecrance I*, Nationwide, relying on the same language of the Stop Loss Contract at issue here, argued that it reserved the right to interpret the terms and conditions of the Plan.[6] The *Rosecrance I* Court, however, rejected this argument, reasoning that:

> The Plan, incorporated into the Contract, had the purpose of setting out the terms and conditions of medical coverage for Plaintiff's employees. As such, any exclusions would have to be "clear and free from doubt." Thus, if after using two months of FMLA leave, an employee would lose medical coverage for any other non-FMLA absence that year, that would need to be clear in the Plan.
>
> The Plan states that the Plaintiff "sets the benefits under the *plan*" and "sets the rights and privileges of *plan* participants to those benefits." And, the Plan states that "[t]he *plan* administrator will have full discretion to interpret *plan* terms; make decisions regarding eligibility; and resolve factual questions." The Contract states that Covered Persons, for whom losses are reimbursable, are those entitled to benefits under the Plan. The Contract does not alter the fact that the Plaintiff sets the benefits under the Plan and that the Plaintiff has full discretion to interpret Plan terms and make decisions regarding eligibility. The Contract specifically states that "the determination of benefits under the Plan is the sole responsibility of the [Plaintiff]." The Defendant only reserved the right "to interpret the terms and conditions of the Plan as they apply to the [Contract]." The Contract did not give Defendant the discretion to not reimburse Plaintiff for employee medical claims paid in accordance with the Plan. If this were allowed, then Defendant could choose to not pay any claims under the Contract.

*Rosecrance I*, 2009 U.S. Dist. LEXIS 30188, at *21–22 (internal citations omitted).

Nationwide argues that Plaintiffs' reliance on *Rosecrance* is misplaced because "[t]he Court did not hold that Nationwide was bound by Rosecrance's determination under the plan; rather, the Court analyzed Nationwide's interpretation of whether the Plan authorized the benefits

---

[6] The Stop Loss Contract in *Rosecrance* stated:

> While the determination of benefits under the Plan is the sole responsibility of the Policyholder, the Company reserves the right to interpret the terms and conditions of the Plan as they apply to the Stop Loss Insurance Contract. If the Company finds that any Payment was not made in accordance with the terms of the Plan, or is not an eligible benefit under the Plan, the Company may exclude such Payment from Losses. The Company will have the sole authority to reimburse or deny Losses under this Contract.

(ECF No. 17, Defs.' Resp. at 10 in Case No. 2:07-cv-1140).

payments and found that a contrary interpretation was appropriate." (ECF No. 15, Defs.' Resp. at 14–15). Riverside counters that "Defendant cannot have it both ways here. Defendant cannot, on the one hand, place the "sole responsibility" of benefits determinations at the feet of Riverside and afford absolute discretion to make those determination, yet on the other hand propose to 'reserve the right' to unilaterally review and reverse Riverside's benefits determination in the interest of denying a claim under the Stop Loss Contract." (ECF No. 16, Pls.' Reply at 10).

If the Court were to apply Nationwide's interpretation, Riverside's discretionary authority and responsibility to make benefits determinations would be rendered superfluous and meaningless because Nationwide could always determine the expenses were not reasonable under the Plan. However, "[a] court should not interpret a contract so as to make meaningless its provisions." *Phillips v. Mercer*, 94 Nev. 279, 282 (Nev. 1978). Further, "contracts should be construed so as to avoid rendering portions of them superfluous." *Musser v. Bank of Am.*, 114 Nev. 945, 950, 964 (Nev. 1998).

To give meaning to both the Plan and the Stop Loss Contract, the aforementioned language must be interpreted to afford Riverside full discretion to interpret the terms of the Plan, including making decisions regarding eligibility and discretion to approve medical claims as reasonable, and Nationwide only reserved the right "to interpret the terms and conditions of the Plan as they apply to the [Contract]." The Stop Loss Contract did not give Nationwide the discretion to decline to reimburse Riverside for employee medical claims paid in accordance with the Plan. If this were allowed, as this Court previously stated, "then Defendant could choose to not pay any claims under the Contract." *Rosecrance I*, 2009 U.S. Dist. LEXIS 30188, at *22.

Therefore, based on the contractual language and the manifested intent of the parties, this Court finds that Nationwide does not have the authority under the Stop Loss Contract to reassess the reasonableness determination made by the plan administrator—Riverside.

**B.      Reasonableness/Question of Fact**

Defendants assert as an alternative argument that there is a question of fact as to whether the medical claims paid by Riverside were reasonable under the Plan. Riverside counters that the express language of the Stop Loss Contract grants Riverside discretionary authority to interpret the Plan and to pay the benefits accordingly. The Court agrees with Riverside. Riverside had the authority to determine the reasonableness of the medical claims. Accordingly, there is no genuine issue of material fact and Riverside is entitled to summary judgment on its breach of contract claim.

## IV.      CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment. Nationwide must, therefore, reimburse Riverside for the medical claims that Riverside found to be covered under the Plan and reasonable. Those claims are covered expenses under the Stop Loss Contract. All other claims remain pending.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: November 17, 2020**